CV 17- 5540

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

DeARCY HALL, J.

TISCIONE, M.J.

------------------------------------x

BRICKLAYERS INSURANCE AND WELFARE
FUND, BRICKLAYERS PENSION FUND,
BRICKLAYERS SUPPLEMENTAL ANNUITY
FUND, BRICKLAYERS AND TROWEL
TRADES INTERNATIONAL PENSION FUND,
NEW YORK CITY AND LONG ISLAND JOINT
APPRENTICESHIP AND TRAINING FUND,
INTERNATIONAL MASONRY INSTITUTE, and
JEREMIAH SULLIVAN, JR., in his fiduciary
capacity as Administrator and Chairman of
Trustees, BRICKLAYERS LOCAL 1,
INTERNATIONAL UNION OF BRICKLAYERS
AND ALLIED CRAFT WORKERS, and
BRICKLAYERS LABOR MANAGEMENT
COMMITTEE,

COMPLAINT

2017 SEP 21 AM 10: 44
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
FILED CLERK

                              Plaintiffs,

           - against -

BILTMORE GENERAL CONTRACTORS, INC.
and FRANK GEISER,

                              Defendants.

------------------------------------x

Plaintiffs, by their attorneys, Doar Rieck DeVita Kaley & Mack, complaining of the Defendants, Biltmore General Contractors, Inc. ("Biltmore") and Frank Geiser ("Geiser"), allege as follows:

<u>JURISDICTION AND VENUE</u>

1. This is an action against Biltmore and Geiser to enforce the provisions of Sections 515, 404 and 409 of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§ 1145, 1104 and 1109, for Biltmore's failure to make employee benefit fund contributions, and for Geiser's breaches of fiduciary duty, respectively. Subject matter jurisdiction is conferred pursuant to ERISA Sections 502(a)(2) and (3), and (g), 29 U.S.C. §§ 1132(a)(2) and (3), and (g).

105804

2. As to Bricklayers Local 1, International Union of Bricklayers & Allied Craft Workers ("Local 1"), subject matter jurisdiction is conferred under Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185.

3. As to the state court actions for conversion and breach of payment bond, supplemental jurisdiction is conferred under 28 U.S.C. § 1367.

4. Supplemental jurisdiction is proper in this instance because Geiser simultaneously embezzled benefit fund assets in violation of ERISA and employee dues monies in violation of state law from the same bricklayers on whose behalf Biltmore failed to make contributions and remit dues. Accordingly, the state court actions arise from a common nucleus of operative fact as the Plaintiffs' federal claims, and are properly before this Court.

5. The funds are administered in the Eastern District of New York. Venue is proper under Section 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2).

## PARTIES

6. Plaintiffs, Bricklayers Insurance and Welfare Fund ("Welfare Fund") (of which the Vacation Fund is a part), Bricklayers Pension Fund ("Pension Fund"), Bricklayers Supplemental Annuity Fund ("Annuity Fund"), Bricklayers and Trowel Trades International Pension Fund ("IPF"), New York City and Long Island Joint Apprenticeship and Training Fund ("JATC"), and the International Masonry Institute ("IMI"), are each an "employee benefit plan" within the meaning of Section 3(3) of ERISA, 29 U.S.C. § 1002(3), a "multiemployer plan" within the meaning of Section 3(37) of ERISA, 29 U.S.C. § 1002(37), and a fiduciary within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A).

7. Jeremiah Sullivan ("Sullivan") is the Chairman of Trustees, unpaid Administrator, and a fiduciary within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A), of the Pension, Annuity and Welfare Funds and the JATC ("Local 1 Funds"). He is also a trustee of the IMI. The trustees of the Local 1 Funds have authorized Sullivan to bring this action on their behalf, as have the trustees of the IMI and IPF. As president of Local 1, Sullivan is also authorized to sue to collect wage assignments that have not been remitted by

employers to Local 1 and its parent, the International Union of Bricklayers & Allied Craft Workers ("I.U."). Sullivan is also a participant in and beneficiary of the Pension, Annuity and Welfare Funds, JATC, IPF, and IMI (collectively referred to as the "Funds").

8. Local 1 is a labor organization within the meaning of Section 301 of the LMRA, 29 U.S.C. § 185.

9. The Labor Management Committee ("LMC") is established and maintained under Section 302(c)(9) of the LMRA, 29 U.S.C. § 186(c)(9).

10. Biltmore is, and at all times hereinafter mentioned was, an employer maintaining offices and conducting business in the State of New York.

11. Upon information and belief, Geiser is the owner and president of Biltmore.

## BACKGROUND

12. Biltmore is party to a collective bargaining agreement with Local 1 covering bricklayers ("CBA"). Under the CBA, Biltmore agreed to make contributions at specified rates per hour worked to pay for the cost of: (1) pension benefits provided by the Pension Fund, Annuity Fund and IPF; (2) medical benefits provided by the Welfare Fund; and (3) training provided by the JATC and IMI.

13. Biltmore is further obligated under the CBA to transmit after-tax deductions from employee wages to the Vacation Fund, which is a component of the Welfare Fund and covered by ERISA, at a specified rate per hour.

14. The CBA also requires Biltmore to transmit after-tax hourly deductions from employee wages to the Funds for dues owed to Local 1 and the I.U.

## UNPAID CONTRIBUTIONS UNDER
## ERISA SECTIONS 1145 & 1132 and LMRA SECTION 301 – BILTMORE

15. Plaintiffs Sullivan, Local 1 and the Funds re-allege paragraphs 1 through 14 as if fully set forth herein.

16. Biltmore owes the Funds $147,109.96 in unpaid contributions for hours worked by Local 1 bricklayers in January 1, 2016 through July 31, 2017.

17. Under the CBA and the applicable plan documents for the Funds, liquidated damages of 20% are owed on the unpaid contributions described above in paragraph 16, plus interest at the rate of 10% per annum, and attorneys' fees under the statute.

## UNREMITTED DUES CHECKOFFS AND UNPAID CONTRIBUTIONS UNDER LMRA SECTION 301 – BILTMORE

18. Plaintiffs Local 1 and the LMC re-allege paragraphs 1 through 17 as if fully set forth herein.

19. Biltmore owes Local 1 and the LMC $17,953.60 in unremitted dues checkoffs and unpaid contributions for hours worked by Local 1 bricklayers in January 1, 2016 through July 31, 2017.

20. Interest of 10% per annum is due from Biltmore under the CBA on the amount described above in paragraph 19.

## FIDUCIARY BREACHES UNDER ERISA SECTION 409 – GEISER

A. The Welfare Fund's Vacation Fund Component

21. Plaintiffs Sullivan and the Welfare Fund re-allege paragraphs 1 through 20 as if fully set forth herein.

22. The Welfare Fund includes a Vacation Fund component that provides vacation benefits to bricklayer participants. The participants pay for the Vacation Fund benefits by having after-tax monies deducted directly from their wages by their employer. The employers are obligated to remit the Vacation Fund deductions to the Welfare Fund on a weekly basis.

23. Geiser directed that $22,900.00 in Vacation Fund deductions be taken from the wages of Local 1 members for hours worked by Local 1 bricklayers in January 1, 2016 through July 31, 2017.

24. Employee contributions to the Vacation Fund component of the Welfare Fund are "plan assets" of an ERISA employee welfare fund under 29 C. F. R. § 2510.3-102(a). However, Geiser failed to segregate the Vacation Fund deductions and remit them to the Welfare Fund. Instead, upon information and belief, Geiser commingled them with Biltmore's general

assets and used these Vacation Fund assets to pay corporate expenses and creditors. By exercising control over the disposition of the wage deductions that constituted employee contributions to the Vacation Fund, Geiser acted as a fiduciary of the Welfare Fund assets within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A).

25. By misappropriating the Vacation Fund deductions for use by Biltmore, Geiser committed a series of breaches of fiduciary duty under Section 404 of ERISA, 29 U.S.C. § 1104, and thereby rendered himself personally liable under Section 409 of ERISA, 29 U.S.C. § 1109, for the $22,900.00 in Vacation Fund deductions taken from the wages of Local 1 members during the relevant time period herein and for any losses resulting from these breaches.

B.  The International Pension Fund

26. Plaintiffs Sullivan and the IPF re-allege paragraphs 1 through 25 as if fully set forth herein.

27. Section 4.1 (a) of the Agreement and Declaration of Trust of the IPF provides that "Title to all monies paid into and/or due and owing the Trust Fund shall be vested in and remain exclusively in the Trustees of the Fund."

28. Geiser manages the day-to-day activities and payrolls of Biltmore and determines if and when to make contributions to the IPF on behalf of Biltmore bricklayers and is therefore a fiduciary of the IPF within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A).

29. Geiser failed to make $9,251.60 in contributions to the IPF for hours worked by Local 1 bricklayers in January 1, 2016 through July 31, 2017.

30. By paying creditors and other corporate expenses of Biltmore prior to making due and owing contributions to the IPF, Geiser exercised control over the disposition of the IPF assets and so committed a series of breaches of fiduciary duty under Section 404 of ERISA, 29 U.S.C. § 1104, and thereby rendered himself personally liable under Section 409 of ERISA, 29 U.S.C. § 1109, for $9,251.60 in IPF contributions and for any losses resulting from these breaches.

C. <u>The Pension Fund</u>

31. Plaintiffs Sullivan and the Pension Fund re-allege paragraphs 1 through 30 as if fully set forth herein.

32. Section 4.1 of the Pension and Annuity Plan of the Pension Fund provides that "Title to all monies paid into and/or owing the Fund shall be vested in and remain exclusively in the Trust of the Fund."

33. Geiser manages the day-to-day activities and payrolls of Biltmore and determines if and when to make contributions to the Pension Fund on behalf of Biltmore bricklayers and so is a fiduciary of the Pension Fund within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A).

34. Geiser owes $33,892.00 in contributions to the Pension Fund for hours worked by Local 1 bricklayers in January 1, 2016 through July 31, 2017.

35. By paying creditors and other corporate expenses of Biltmore prior to making due and owing contributions to the Pension Fund, Geiser exercised control over the disposition of the Pension Fund assets and so committed a series of breaches of fiduciary duty under Section 404 of ERISA, 29 U.S.C. § 1104, and thereby rendered himself personally liable under Section 409 of ERISA, 29 U.S.C. § 1109, for $33,892.00 in Pension Fund contributions and for any losses resulting from these breaches.

D. <u>The Annuity Fund</u>

36. Plaintiffs Sullivan and the Annuity Fund re-allege paragraphs 1 through 35 as if fully set forth herein.

37. Section 4.1 of the Supplemental Annuity Plan of the Annuity Fund provides that "Title to all monies paid into and/or owing the Fund shall be vested in and remain exclusively in the Trust of the Fund."

38. Geiser manages the day-to-day activities and payrolls of Biltmore and determines if and when to make contributions to the Annuity Fund on behalf of Biltmore

bricklayers and so is a fiduciary of the Annuity Fund within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A).

39. Geiser owes $30,915.00 in contributions to the Annuity Fund for hours worked by Local 1 bricklayers in January 1, 2016 through July 31, 2017.

40. By paying creditors and other corporate expenses of Biltmore prior to making due and owing contributions to the Annuity Fund, Geiser exercised control over the disposition of the Annuity Fund assets and so committed a series of breaches of fiduciary duty under Section 404 of ERISA, 29 U.S.C. § 1104, and thereby rendered himself personally liable under Section 409 of ERISA, 29 U.S.C. § 1109, for $30,915.00 in Annuity Fund contributions and for any losses resulting from these breaches.

## STATE LAW CONVERSION – GEISER

41. Plaintiff Local 1 re-alleges paragraphs 1 through 40 as if fully set forth herein.

42. Geiser directed that $17,037.60 in dues deductions be taken from the paychecks of Local 1 members for hours worked by Local 1 bricklayers in January 1, 2016 through July 31, 2017. The dues deductions taken from the paychecks of Local 1 members were the property of said bricklayers and should have been segregated from the assets of defendants. Geiser, however, failed to segregate the dues deductions and remit them to Local 1. Instead, upon information and belief, commingled them with Biltmore's general assets and used these Local 1 assets to pay corporate expenses and creditors.

43. As a result, Geiser unlawfully converted these monies and is therefore personally liable to make Local 1 whole for the $17,037.60 in unremitted dues checkoffs.

## INJUNCTIVE RELIEF UNDER ERISA SECTION 1132 – BILTMORE

44. Plaintiffs Sullivan, Local 1, the LMC and the Funds re-allege paragraphs 1 through 43 as if fully set forth herein.

45. Pursuant to the terms and conditions of the CBA and the plan documents of the Funds, Biltmore is required, inter alia, to file certain employer contribution reports with Plaintiff Funds. It is further required to permit and cooperate with Plaintiff Funds in the conduct

of audits of Defendants' books and records including, but not limited to, payroll, payroll ledgers, computer payroll printouts, W-2 forms, quarterly federal payroll tax returns (forms WRS-2 and WRS-30), annual federal tax returns, cash disbursements journals, purchase journals, 1099 forms, New York and New Jersey employment records, insurance company reports, supporting checks, ledgers, vouchers and any and all other items concerning payroll. This production includes any certified payrolls of Biltmore and of any subcontractors it retained, and copies of all contracts between Biltmore and any subcontractors it retained to perform work on Local 1 projects. These requirements are for the purpose of ascertaining the amount of fringe benefits contributions owed to the Funds, contributions owed to the LMC, and dues owed to Local 1 from Biltmore, and of verifying the accuracy of the employer contribution reports, if filed.

46. In an action to enforce Section 515 of ERISA, 29 U.S.C. § 1145, a court may award, in addition to certain categories of monetary damages, such other legal or equitable relief as the court deems appropriate. That relief may include an injunction directing that Biltmore cooperate in the conduct of an audit of its books and records. Under the CBA, Plaintiffs are entitled to an audit in connection with Biltmore's obligation to make contributions and remit dues, and would suffer irreparable harm if Biltmore were permitted to evade its obligation to submit to an audit because there is no other mechanism which can accurately determine the full amount owed by the CBA signatories. This injury would lack an adequate remedy at law, since the full extent of the damages sought would remain unknown.

47. Accordingly, pursuant to the terms and conditions of the CBA, Plaintiffs demand an order requiring Biltmore to permit and to cooperate with Plaintiffs in the conduct of an audit of its books and records for the payroll periods of the weeks beginning with the end period of its most recent audit and continuing through the present time and to pay any delinquencies shown to be due as a result of such audit.

## DEMAND FOR RELIEF

WHEREFORE, Plaintiffs Sullivan, Local 1 and the Funds demand Judgment against Biltmore under ERISA and the LMRA as follows:

1. a. For unpaid contributions owed to the Plaintiff Funds, in the amount of $147,109.96 (ERISA Section 502(g)(2)(A));

b. For interest assessed on unpaid contributions at the per annum rate of 10% to be determined at a later date (ERISA Section 502(g)(2)(B));

c. For 20% liquidated damages assessed on unpaid contributions owed to Plaintiff Funds (ERISA Section 502(g)(2)(C)(ii));

d. For the costs of filing this action in the amount of $400.00 (ERISA Section 502(g)(2)(D));

e. For attorneys' fees and costs of this action (ERISA Section 502(g)(2)(D)).

2. Such other legal or equitable relief as this Court deems appropriate, including an order that Biltmore be directed to cooperate in the conduct of an audit of Biltmore's books and records pursuant to paragraphs 45 through 47 above (ERISA Section 502(g)(2)(E)).

WHEREFORE, Plaintiffs Sullivan, the Welfare Fund, IPF, Pension Fund and Annuity Fund demand Judgment against Geiser under ERISA for breaches of fiduciary duty under Section 409 of ERISA, 29 U.S.C. § 1109, in the amount of $96,958.60.

WHEREFORE, Plaintiffs Local 1 and the LMC demand Judgment against Biltmore under the LMRA as follows:

1. For unremitted dues owed Local 1 and unpaid contributions owed the LMC in the amount of $17,953.60.

2. For interest assessed on delinquent dues checkoffs and contributions owed Local 1 and the LMC at the per annum rate of 10% to be determined at a later date.

WHEREFORE, Plaintiff Local 1 demands Judgment against Geiser under state law for conversion of dues deductions in the amount of $17,037.60.

Dated:   New York, New York
         September 19, 2017

DOAR RIECK DeVITA KALEY & MACK

By: *[signature]*
Michael R. Minnefor, Esq.

*[signature]*
Joel A. Siegel, Esq.
217 Broadway, Suite 707
New York, New York 10007
(212) 619-3730
*Attorneys for Plaintiffs*

105804

10